IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:25-CV-432-RJ

RYAN N. KUZIAN,

Plaintiff/Claimant,

v.

FRANK J. BISIGNANO,
*Commissioner of Social Security*,

Defendant.

ORDER

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-16, -19]. Claimant Ryan N. Kuzian ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). Having carefully reviewed the administrative record and the briefs submitted by the parties, the decision of the Commissioner is reversed and the matter is remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on September 12, 2022, alleging disability beginning January 15, 2019. (R. 15, 198–200, 221–22). The claim was denied initially and upon reconsideration. (R. 59–76). A hearing before Administrative Law Judge ("ALJ") Willis was held on April 4, 2024, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 31–58). On May 13, 2024, the ALJ issued a decision denying Claimant's request for benefits, (R. 12–30), and the Appeals Council denied Claimant's request for review, (R. 1–7). Claimant then filed a complaint in this court seeking

review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity from the alleged onset date of January 15, 2019, through his date last insured of March 31, 2023. (R. 17). Next, the ALJ determined Claimant had severe impairments of obesity; degenerative disc disease; post-traumatic osteoarthritis of the right lower extremity, status-post multiple surgeries. *Id.* At step three, the ALJ concluded Claimant's impairments were not severe

enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17–20).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform light work[1] with the following limitations:

> [S]tanding-walking for no more than 2 hours over the course of a typical 8 hour workday with normal breaks; no pushing, pulling, or operating foot controls with the right lower extremity; occasional climbing ramps and stairs, balancing, and stooping; no climbing ladders, ropes or scaffolds, kneeling, crouching, or crawling; must avoid concentrated exposure to vibration; avoid all exposure to workplace hazards, such as dangerous moving machinery and unprotected heights.

(R. 20–23) (footnote omitted). In making this assessment, the ALJ found Claimant's statements about his limitations were not persuasive of disability based upon the medical and other evidence in the record. (R. 21). At step four, the ALJ concluded Claimant was unable to perform any past relevant work. (R. 23). However, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that he can perform. (R. 23–24).

## V. DISCUSSION

Claimant asserts that the ALJ erred by failing to consider the impact of his orthopedic pain when determining his RFC, and furthermore, that the Appeals Council erred in failing to properly consider a medical opinion that post-dated the ALJ's decision. Pl.'s Br. [DE-16] at 18–33.[2] The Commissioner contends that substantial evidence supports the ALJ's RFC determination and that

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

[2] The page numbers referenced are those found in the CM/ECF footer where, as here, they differ from the document's internal pagination.

the Appeals Council properly evaluated the evidence submitted. Def.'s Br. [DE-19] at 6–18.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

In the RFC determination the ALJ noted Claimant has had multiple surgeries on his knee; he currently suffers from post-traumatic osteoarthritis in his knee; and he may eventually need a

total knee replacement. (R. 21). Discussing Claimant's back issues, the ALJ also noted Claimant has had injections in his lumbar spine to manage back pain, and an x-ray showed mild degenerative disc disease at L4-5 and L5-S1. *Id.* Absent from the RFC determination is any discussion of Claimant's subjective complaints, particularly when it comes to the resulting pain.

At the hearing Claimant testified that due to the severity of his pain he is in bed twenty to twenty-two hours a day. (R. 40). At the time of the hearing, he had been prescribed Tramadol and muscle relaxants for his pain, which he tried to take sparingly, however he had recently run out of both medications. *Id.* He rated his knee pain level as typically being a constant seven to eight out of ten. (R. 42). Claimant had attempted to do some part-time work for a friend at their auto shop, working two days a week. (R. 50). It was light work but after working one day, Claimant would be out the following day due to his pain. *Id.*

Claimant contends the ALJ failed to properly consider his subjective complaints of severe pain when determining the RFC. Pl.'s Br. [DE-16] at 21. Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes that determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 16-3p, 2016 WL 1119029, at *4; *Hines*, 453 F.3d at 564–65. Claimant asserts the ALJ failed to address the second step, completely ignoring Claimant's testimony

concerning the persistence and limiting effects of his pain. Pl.'s Br. [DE-16] at 23–24.

An ALJ is not required to accept the claimant's statements at face value; rather, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." S.S.R. 16-3p, 2016 WL 1119029, at *6; *see Ladda v. Berryhill*, 749 F. App'x 166, 171 (4th Cir. 2018) ("The ALJ cannot 'reject a claimant's statements about the intensity and persistence of . . . pain or other symptoms' or about the effect of those symptoms on a claimant's ability to work 'solely because the available objective medical evidence does not substantiate them.'") (quoting 20 C.F.R. § 404.1529(c)(2)); *Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011). As the Fourth Circuit held in *Shelley C. v. Comm'r of the SSA*, subjective statements from claimants "should be treated as evidence *substantiating* the claimant's impairment." 61 F.4th 341, 360 (4th Cir. 2023) (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97–98 (4th Cir. 2020).

At the first step, the ALJ determined that "[C]laimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 21). Notably though, nowhere in the opinion does the ALJ discuss how Claimant describes his symptoms or any of his hearing testimony. At the second step, the ALJ found "[C]laimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not persuasive of disability based upon the medical and other evidence in the record, for the reasons explained in this decision." *Id.* Next, the ALJ turned to the opinion evidence in the record, never offering the promised explanation as to why Claimant's subjective complaints were not persuasive of disability. *See Julie J. v. O'Malley*, No. 5:23-CV-00007, 2024 WL 890001, at *14 (W.D. Va. Mar. 1, 2024) ("the ALJ must give specific reasons, supported by 'references to the evidence,' for the weight assigned to the claimant's statements." (citing *Edwards v. Colvin*, No. 4:13cv1, 2013 WL 5720337, at *6

(W.D. Va. Oct. 21, 2013) (citing SSR 96-7p, 1996 WL 374186, at *2, *4–5 (July 2, 1996)).

The Commissioner asserts Claimant is making an improper request for this court to disregard the ALJ's findings and reweigh the evidence. Def.'s Br. [DE-19] at 7–8. To support this the Commissioner refers to the ALJ's review of a third-party function report completed by Claimant's girlfriend. (R. 23). The ALJ found although the statements in the report were "consistent with the statements made by the [C]laimant, the statements do not constitute an opinion under the current rules." *Id.* Next, the commissioner notes the ALJ stated he considered Claimant's testimony based on the final paragraph of the RFC determination which states "after carefully considering the entire record, including the [C]laimant's testimony, the undersigned concludes that the [C]laimant's impairments are not as severe or limiting as alleged." *Id.* The Commissioner's argument is unpersuasive.

The ALJ's lack of a narrative explanation frustrates meaningful review. *See Tyndall v. Kijakazi*, No. 5:22-CV-403-RJ, 2023 WL 7149493, at *5 (E.D.N.C. Oct. 31, 2023) ("The ALJ is required to consider a claimant's statements about her symptoms, 20 C.F.R. § 404.1529(a), S.S.R. 16-3p, and the ALJ's failure to explain how he evaluated Claimant's statements hampers the court's ability to conduct a meaningful review."). The RFC contains a summary of some of Claimant's treatment records and a review of offered medical opinions but even read as a whole they do not provide a narrative discussion explaining the ALJ's decision to dismiss Claimant's subjective complaints. *See Mascio*, 780 F.3d at 636 ("the [RFC] 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)'" (quoting SSR 96–8p)). Therefore, the matter is remanded for further proceedings. Given the need for remand on this issue alone, the court declines to address the remaining assertions of error.

## VI. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is reversed and the matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

So ordered, this the 21 day of September 2026.

Robert B. Jones, Jr.
United States Magistrate Judge